**Robert Louis MARRAMA, Debtor.**

**Robert Louis Marrama, Appellant,**

v.

**Mark G. Degiacomo, Chapter 7 Trustee, Appellee.**

**BAP No. MB 04–023.**
**Bankruptcy No. 03–11987–WCH.**

United States Bankruptcy Appellate Panel of the First Circuit.

Nov. 4, 2004.

David G. Baker, Charlestown, MA, on brief for Appellant.

Olga L. Bogdanov, Worcester, MA, on brief for Appellee.

Before LAMOUTTE, VOTOLATO, and HAINES, United States Bankruptcy Appellate Panel Judges.

PER CURIAM.

Before us is Chapter 7 Debtor Robert Marrama's appeal from a bankruptcy court order granting the Chapter 7 Trustee's Motion for Authority to Revoke the Bo–Mar Realty Trust (the "Trust"). Because Marrama is concededly the Trust's settlor, we conclude that the power of revocation resided in him and that the bankruptcy court correctly determined that the power was within Marrama's bankruptcy estate and exercisable by the Chapter 7 trustee. We therefore **AFFIRM.**

## BACKGROUND

In March 2003, Marrama filed a voluntary Chapter 7 petition. Previously, he had created the Bo–Mar Realty Trust [1] and transferred into it his 100% ownership interest in real property located at 10 Norton Avenue, York, Maine. In its first paragraph, the Trust provides: "This shall be a revocable trust." Paragraph 7 provides that the Trust will terminate upon Marrama's death or upon the sale of all Trust real estate.

About a year after the bankruptcy filing, the Chapter 7 Trustee moved for authority to revoke the Trust, arguing that Marrama held the power to revoke the trust and that the revocation power was an asset of the bankruptcy estate. The motion described, inter alia, Marrama's Schedule B, his testimony during the § 341 meeting, and the Trust instrument. Marrama objected, arguing that his interest in the Trust was not property of the estate because the Trust contained spendthrift provisions,[2] that the Trust was irrevocable, and that the Chapter 7 Trustee could not attack the Trust because he had not objected to Marrama's claimed exemption for his interest in the Trust or challenged the Trust's validity. The bankruptcy court overruled Marrama's objections and authorized the Chapter 7 Trustee to revoke the Trust. This appeal ensued.

## JURISDICTION

A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An interlocutory order "'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re American Colonial Broad. Corp.,* 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy appellate

---

**1.** Although the Trust instrument indicates that Josephine Bolletiero created the Trust, at oral argument Marrama's counsel conceded that Marrama was in fact the settlor.

**2.** The Trust's sixth paragraph contains the following spendthrift provision:

No rights of the beneficiaries hereunder shall be subject to assignment or anticipation; nor shall said rights be liable for any indebtedness or obligations of any beneficiary; nor shall such rights be subject to attachment or any other order, decree or process of the Court on account of, or for the purpose of collecting any such indebtedness or obligation of any beneficiary.

panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.,* 226 B.R. 724 (1st Cir. BAP 1998). Here, the order before us is final because it ended the litigation on the merits on the issue of whether the Chapter 7 Trustee had authority to revoke the Trust. *See id.*

## STANDARD OF REVIEW

■ Appellate courts generally apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See TI Fed. Credit Union v. Del-Bonis,* 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.),* 43 F.3d 714, 719–20 n. 8 (1st Cir.1994). A bankruptcy court's determination that an asset is property of the bankruptcy estate is a question of law subject to *de novo* review. *Ostrander v. Lalchandani (In re Lalchandani),* 279 B.R. 880, 883 (1st Cir. BAP 2002). A determination that the settlor of a trust has the power to revoke that trust requires interpretation of the trust instrument, which is also a question of law subject to *de novo* review. *See Spenlinhauer v. Spencer Press, Inc. (In re Spenlinhauer),* 195 B.R. 543 (D.Me.), *aff'd,* 101 F.3d 106 (1st Cir.1996).

## DISCUSSION

■ The two pivotal issues are whether Marrama held the power to revoke the Trust when he filed for relief and, if so, whether that power became part of the bankruptcy estate so that the Chapter 7 Trustee might properly exercise it. Whether and to what extent the debtor has a legal or equitable interest in property is a state law question; whether that interest is property of the bankruptcy estate is decided by federal law. *Butner v.*

*United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

### A. The Power to Revoke: Debtor's Property Interest under State Law

#### 1. *Choice of Law*

■ The Trust does not contain an express choice of law term, but it was executed in Maine and its res is Maine real property. Marrama concedes that Maine law applies. We will therefore apply Maine law to questions anent the Trust's interpretation.

#### 2. *Power to Revoke the Trust*

Quoting paragraph 1 of the Trust, which provides "[t]his shall be a revocable trust," the Chapter 7 Trustee argues that Marrama retained the power to revoke the Trust in his capacity as settlor. Appellee's Brief at 7. Marrama's response compels no analysis: he merely insists "it isn't so," ignoring the Trust's express language. Alternately, he argues that the power to revoke reserved in paragraph 1 refers only to the termination conditions provided for in paragraph 7. He insists that the terms "revocation" and "termination" are interchangeable.

■ Where a trust instrument provides that the trust is "revocable," it means that the trust is revocable by the settlor, or the person who caused the trust to be created. *See, e.g., First Nat'l Bank of Bar Harbor v. Anthony,* 557 A.2d 957, 959 (Me.1989) (discussing settlor's reservation of revocation power); *Staples v. King,* 433 A.2d 407, 408 (Me.1981) (same); *Restatement of (Third) Trusts* §§ 63(1), 330; George T. Bogert, *Trusts,* § 148 (6th ed.1987). When a settlor revokes a trust, he rescinds the act that created the trust. *See* George T. Bogert, *Trusts,* § 148 (6th ed.1987). Here, the Trust instrument clearly states that the Trust is revocable. As Marrama

is the settlor, the power to revoke the Trust resided in him. *See id.*[3]

The terms "revocation" and "termination" are generally not synonymous. *See* 76 *Am.Jur.2d Trusts* § 97 (explaining that termination is an umbrella term under which revocation is one of many specific forms). Paragraph 7 of the Trust instrument provides specific conditions upon which the Trust terminates: death of the last surviving primary beneficiary, or the sale of all Trust real estate. These termination events are distinct from Marrama's revocation power, which is unconditional. Indeed, termination of the Trust on either of those conditions is a function of the Trust's operation, not its revocation. Marrama cites *In re Beatrice*, 296 B.R. 576 (1st Cir. BAP 2003), for the proposition that the terms "revocation" and "termination" are generally interchangeable. *Beatrice*, however, did not interpret a trust document. It considered a bankruptcy court determination that a debtor/settlor retained sufficient control over a trust res such that the res became property of the bankruptcy estate. *Beatrice*, 296 B.R. at 580. *Beatrice* concluded that, as far as the issue before it was concerned, it mattered not whether the trust instrument provided the debtor/settlor the power of termination or revocation. *Id.* at 580–81. The *Beatrice* court neither held nor suggested that the terms "revocation" and "termination" are generally synonymous.[4] *See generally id.*

Thus, when Marrama filed bankruptcy, among the property interests he held was the power to revoke the Bo–Mar Trust. The question next becomes whether that interest became part of Marrama's bankruptcy estate and whether the Chapter 7 trustee was properly authorized to exercise it.

## B. Property of the Bankruptcy Estate

Section 541(a)(1) of the Bankruptcy Code provides that property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Courts construe § 541 broadly to bring any and all of the debtor's property rights within the bankruptcy court's jurisdiction. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

### 1. Power to Revoke Can Constitute Property of the Bankruptcy Estate

Marrama argues that the power to revoke a trust is not "property." Appellant's Brief at 12 (citing *George v. Kitchens By Rice Bros.*, 665 F.2d 7 (1st Cir.1981)). In *George,* the First Circuit held that a debtor's power to revoke a trust of which her children were the beneficiaries was not property of the bankruptcy estate. *George*, 665 F.2d at 8. However, as explained in *Cowles, George's* holding does not apply where the debtor is a trust's beneficiary. *See In re Cowles*, 143 B.R. 5, 7 (Bankr.D.Mass.1992) (citing *George*, 665 F.2d at 7).

---

**3.** Even had Marrama not expressly conceded his role as settlor, it is undisputed that he created the trust. *See Marrama v. Citizens Bank of Mass. (In re Marrama)*, 313 B.R. 525, 527 (1st Cir. BAP 2004) (explaining that Marrama had purchased the property several years ago, and then later conveyed it to the Trust for no consideration in order to protect it). "The person who creates a trust is the settlor." *Restatement (Third) of Trusts* § 3(1) (2003).

**4.** The *Beatrice* court explained that the terms "revocation" and "termination" are used interchangeably within the realm of trust law. *Beatrice*, 296 B.R. at 581. However, that the terms may sometimes be used interchangeably does not mean that they are synonymous.

Section 541(b)(1)'s exclusion of "any power that the debtor may exercise solely for the benefit of an entity other than the debtor" plainly implies that the bankruptcy estate includes a power that the debtor may exercise for his own benefit, such as the power to revoke a self-settled trust of which he is the beneficiary.

Here, Marrama is the sole beneficiary of the Trust, and any power he has to revoke the Trust is property of the bankruptcy estate. *See id.; Aylward v. Landry (In re Landry)*, 226 B.R. 507, 510 (Bankr.D.Mass.1998) (holding that trust property was property of the bankruptcy estate where debtor was beneficiary of and could exert control over trust); *In re Spenlinhauer*, 182 B.R. 361, 363 (Bankr. D.Me.1995), *aff'd*, 195 B.R. 543 (D.Me. 1996) (same); Lawrence P. King, 5 *Collier on Bankruptcy* ¶ 541.11 (15th ed. rev. 2002).[5]

---

**5.** The underpinnings of this appeal are uncomplicated and the result straightforward. Thus, we have addressed the merits. *See United States v. Saccoccia*, 58 F.3d 754, 766 n. 6 (1st Cir.1995) (bypassing jurisdictional issue where ruling on the merits led to same result) (citing *Norton v. Mathews*, 427 U.S. 524, 532, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976)). However, there exists a separate ground on which we believe the relief Marrama seeks is foreclosed.

During the pendency of this appeal, the bankruptcy court entered an order granting the Chapter 7 Trustee's motion to sell the Maine real estate that, prior to revocation, was the Bo–Mar Trust res. Supp.App. at 24. Marrama did not appeal that order and, like the order before us, it was not stayed. *See id.* Following oral argument, we ordered supplementation of the record and supplemental briefs to assay mootness.

Although the Chapter 7 Trustee continues to hold undisbursed sale proceeds, and Marrama argues that the issues raised by this appeal remain vital so that he might retain the ability to seek those funds, we see the course of recent events as precluding the possibility Marrama could obtain meaningful relief here.

## CONCLUSION

The bankruptcy court did not err in granting the Chapter 7 Trustee's motion seeking authority to revoke the Bo–Mar trust. We **AFFIRM** the order granting that motion.

The real estate reverted back to Marrama after the Chapter 7 Trustee properly revoked the Trust. It became property of the bankruptcy estate. Section 363(b)(1), and the bankruptcy court's order authorized the Chapter 7 Trustee to sell it. *See* 11 U.S.C. § 363(b)(1). The Chapter 7 Trustee correctly points out that, in the absence of a stay, the sale of property of the estate to a buyer in good faith is final. *See Anheuser–Busch, Inc. v. Miller (In re Stadium Mgmt. Corp.)*, 895 F.2d 845, (1st Cir.1990) (citing 11 U.S.C. § 363(m)). Accordingly, even if Marrama had prevailed with this appeal, the court-approved sale cannot now be undone. He cannot reclaim the property.

Moreover, the Trust instrument provides that the Trust terminates on sale of all Trust real estate. The Maine realty was the only Trust real estate. Accordingly, the sale triggered the Trust's termination. As the Trust no longer exists for that reason (in addition to revocation), Marrama cannot seek the sale proceeds under the Trust's terms. *See Rochman v. Northeast Util. Serv. Group (In re Public Service Co.)*, 963 F.2d 469, 471 (1st Cir. 1992).